UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK        11 cv 0469 Holwell, Judge
------------------------------------------------------------X
KELBY FREDERICK,

                      Plaintiff,        **COMPLAINT**

    -against-

NEW YORK CITY,
DETECTIVE MARK LOBEL
DETECTIVE McDERMOTT
and UNIDENTIFIED POLICE OFFICERS,        **JURY TRIAL DEMANDED**

                      Defendant(s).
------------------------------------------------------------X

The plaintiff, complaining of the defendants, by his attorney, FRED LICHTMACHER, ESQ., respectfully shows to this Court and alleges:

## JURISDICTION

1    Jurisdiction is founded upon the existence of a Federal Question.

2    This is an action to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of rights, privileges, and immunities secured to plaintiff by the Fourth and Fourteenth Amendments to the Constitution of the United States pursuant to 42 U.S.C. § 1983.

3    Jurisdiction is founded upon 28 U.S.C. Sections 1331, 1343(3 & 4).

4    Venue is appropriate pursuant to 28 U.S.C. Sections 1391 (b) (1 & 2).

## PARTIES

5    The plaintiff, KELBY FREDERICK, is a resident of the County of Queens in the City and State of New York and he is an adult, African-American male.

6    Upon information and belief, that at all times hereinafter mentioned, the defendant, CITY OF NEW YORK, (NYC) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant defendants

DETECTIVE MARK LOBEL, DETECTIVE McDERMOTT and UNIDENTIFIED POLICE OFFICERS were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

7      Upon information and belief, that at all times hereinafter mentioned, defendants were employed by the defendant, NYC, as members of its police department.

8      Upon information and belief, that at all times hereinafter mentioned, the defendant, NYC, its agents, servants and employees operated, maintained and controlled the NEW YORK CITY POLICE DEPARTMENT (NYPD), including all the police officers thereof.

9      The NYPD, is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the commissioner of the NYPD is responsible for the policies, practices and customs of the NYPD as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees and is the final decision maker for that agency.

10     This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983.

11     Each and all of the acts of the defendants alleged herein were done by the defendants, acting as state actors acting under the color of law.

## STATEMENT OF FACTS

12     On October 6, 2009 at approximately 4:40 pm near 140th Avenue and 159th Street in Queens New York there was a drive by shooting.

13     The shooting Victim's Brother, then 15, was an eyewitness to the shooting. The Victim was sitting on his front stoop when the shots rang out. The Victim's Brother was inside his home, behind

a screen door and a wrought iron gate.

14     The night of the shooting the defendants, Detective Mark LoBel and Detective McDermott, came to the Victim and his Brother's home. The shooting Victim (who survived) was initially unable to identify either of the occupants of the car. However, he did indicate that there were two male blacks in the vehicle. His Brother saw the vehicle which he specifically indicated to the defendants was a black, four door Honda with two occupants in the vehicle both of whom were male blacks. That was the only description that the Brother could give of the driver and the passenger in the front seats.

15     Within a short distance from the shooting, very close to plaintiff's home, the NYPD recovered a stolen vehicle which was a gray, two door, Hyundai Tiburon.

16     Upon information and belief, after it was determined that a stolen vehicle was found near plaintiff's home, and without any further information connecting plaintiff to the stolen automobile, defendants obtained a photograph of the plaintiff. Defendants placed plaintiff's photograph within a photo array and brought the array to the Victim and his Brother's home.

17     The Victim, whose view was not impeded by the screen door and the wrought iron gate, was unable to identify anyone in the photo spread. The Brother, 15 years old at that time, whose view was impeded by the screen door and the gate, indicated that number #4 looked like the person but he could not be sure. He stated further "I can't be sure, I am not sure it's # 4." The defendants then improperly told the Brother that #4 was the person they suspected was involved. The Brother then waited a moment or two, looked at the photo spread again, and then, due to the improper suggestion, identified #4, who was Kelby Frederick, as the driver of the vehicle.

18     Two weeks later the Brother and the Victim went to view a line up at the precinct with the defendants present. The Victim viewed the line up first. He did not identify the plaintiff but he did

identify someone other than the plaintiff as being the shooter. This crucial fact, that the Victim identified someone other than the plaintiff as being the shooter, was intentionally and improperly withheld from the plaintiff throughout the criminal case. Instead, plaintiff's counsel was disingenuously informed and the defendant LoBel even provided false information, that the Victim could not identify anyone, whereas he in fact had identified someone other than the plaintiff.

19   The Brother did identify Kelby Frederick from the lineup, but not because he saw him as the shooter, but he has indicated he did so because he was simply identifying the person from the photograph, the person LoBel indicated to him he and his partner believed did the shooting.

20   Plaintiff was arrested on October 22, 2009 solely due to the improper actions of the defendants. Defendant Detective Mark LoBel falsely alleged in the felony complaint that the stolen vehicle found outside of plaintiff's home was the vehicle used during the shooting. In the felony complaint, LoBel, falsely reported that a person known to the New York City Police department had identified a grey, two door, Hyundai Tiburon as being the vehicle the shooter occupied, and that the shooter was Kelby Frederick, statements which were patently false and which starkly contrasted with what the Brother had told him, including that the vehicle used in the shooting was a black, four door Honda. In addition, the Brother was never shown the stolen car the defendants recovered.

21   Plaintiff was forced to retain counsel and to make numerous court appearances.

22   The prosecutor's office, retrieved DNA from various items from the stolen grey Hyundai. From testing on the DNA, it was determined that plaintiff's DNA was not found in the car and that this car apparently was not even the vehicle used in the shooting. This determination was made approximately a year after plaintiff was arrested while he was still being detained awaiting trial.

23   The felony complaint, in which defendants provided false information, was the accusatory instrument that the People relied on at the original arraignment when bail was set in the amount of

$100,000 dollars. This was an amount which plaintiff could not raise, resulting in his being incarcerated on the false charges from October 22, 2009 continuously through November 1, 2010. It was due to the false allegations, that the vehicle recovered was in fact the vehicle involved in the shooting, that bail was set so high.

24    The People argued that the stolen vehicle, which falsely alleged to be the one used in the shooting, was recovered on the same block where plaintiff lived. The argument at that time was that the defendant had access to the stolen vehicle since it was recovered near his home and this allegedly connected him to the crime. LoBel did not reveal that the Brother had described a car which was a different make a different color and which had four not two doors.

25    During pretrial hearings, defendant LoBel testified that there was allegedly an "anonymous call" to the detective's squad in which the caller overheard two individuals talking about a person named Kelby as being involved in a shooting. However, neither of the defendants, and upon information and belief, no other member of the NYPD, ever generated a DD 5 pursuant to the alleged call, nor did anyone record the information allegedly received from the "anonymous caller" anywhere.

26    The prosecutor contacted plaintiff's criminal counsel shortly before trial was scheduled to begin and indicated that 1) the DNA from the stolen car came back as a "no hit" to plaintiff and 2) that for the first time she learned that the Brother had never viewed the recovered stolen vehicle allegedly used in the crime. Once the Brother was finally shown the photo of the vehicle by the prosecutor, he said in fact that it was not the vehicle he saw used in the shooting.

27    There were numerous delays while plaintiff was still incarcerated waiting for trial as the DA's office was awaiting DNA results, which were unnecessary, because in fact the vehicle recovered was not the vehicle or even similar to the vehicle that was involved in the shooting as was

falsely represented by the defendants.

28     Plaintiff was jailed from October 22, 2009 until November 1, 2010 when the charges were dismissed and sealed upon the motion of the Queens District Attorney.

29     The bail which was $100,000 dollars would not have been that high if the defendants had not made overt and intentional misrepresentations in their initial reports.

30     Plaintiff could never have been prosecuted at all had the defendants not unduly and wrongfully influenced the 15 year old Brother to make an identification.

31     Plaintiff's prosecution would have ended earlier, or at least his bail would have been reduced, had the defendants not hidden the fact that the Victim identified someone other than the plaintiff as the true culprit.

32     Defendants, who were inside the Victim's home, knew or should have known that the view from inside the home thru the screen door and thru the metal wrought iron gate door made it impossible to make a positive identification of people outside in a moving vehicle.

33     Additionally, when the defendants initially interviewed the Brother, he could only describe two male blacks.  No further physical description was given.  The Victim, who was outside on the steps, obviously closer to the vehicle, couldn't give any description of the occupants other than they were two male blacks.

34     Moreover, the DD5's reveal that there were neighbors outside at the time of the incident, and they indicated they could not give a physical description of the driver or the shooter because the vehicle was traveling too fast. Any reasonable detective would know that the likelihood of a reasonable or reliable identification was zero, yet the defendants pursued the case against the plaintiff and unduly influenced the Brother to identify plaintiff, when he could not.

35     The prosecutor's office and the detectives never revealed to plaintiff's criminal attorney,

which they are obligated to do, that the Victim had selected someone else in the line up other than the plaintiff. What they instead indicated was that he could not identify anyone.

### AS AND FOR A FIRST CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF
### VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO
### 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
### FALSE ARREST

36   Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

37   The plaintiff's rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that plaintiff was subject to being falsely arrested by the defendants.

38   The defendants confined the plaintiff, in that plaintiff was not free to leave, defendants intended to confine plaintiff, plaintiff was conscious of confinement, plaintiff did not consent to confinement and confinement was not otherwise privileged.

39   As a direct result of defendants' actions, plaintiff was deprived of rights, privileges and immunities under the Fourth and Fourteenth Amendments of the United States Constitution, being more particularly, plaintiff's right to be free from arrest without probable cause.

40   The false arrest of the plaintiff was caused by the defendants, without legal justification, without authority of law and without any reasonable cause or belief that the plaintiff was in fact guilty of crimes.

41   The various defendants who knew of the false arrest and allowed the illegal detention of the plaintiff to commence and/or continue, are liable to the plaintiff via their failure to act pursuant to their affirmative duty to intervene.

42      By reason of the false arrest, plaintiff was subjected to pecuniary harms, lost employment opportunities, he was subjected to great indignities, humiliation, anxiety, he was forced to appear in court, he spent time in jail, he was prevented from conducting his normal affairs of business, he was searched, handcuffed, stip searched and he was subjected to numerous other harms.

43      That defendants who are supervisors within the NYPD who knew of the false arrest and continued to allow and/or participate and/or cause the arrest of the plaintiff and who either directly participated in the violation of plaintiff's rights or who after learning of the violation, failed to remedy the wrong, are liable to the plaintiff for the violation of his rights pursuant to the Fourth Amendment and via the principle of supervisor liability.

44      By reason of the aforesaid, the plaintiff is entitled to compensatory damages in a sum to be determined at trial, he is entitled to an award of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT MALICIOUS PROSECUTION

45      Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

46      Plaintiff's rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C.§1983, in that the plaintiff was maliciously prosecuted by the defendants.

47      The  malicious prosecution was initiated by the defendants, their agents, servants and employees, without any legal justification and without probable cause in that the defendants caused the commencement and continuation of criminal proceedings against the plaintiff, the proceedings

terminated in favor of the plaintiff via a dismissal upon the motion of the prosecutor and in that the action was commenced and continued intentionally and with malice and deliberate indifference to plaintiff's rights.

48   By reason of the unlawful malicious prosecution, the plaintiff was subjected to pecuniary harms, great indignities, humiliation, anxiety, he was forced to spend over a year in jail as well as being forced to make numerous forced court appearances, he lost employment opportunities, he was searched, stip searched, handcuffed, he was separated from his family and he was subjected to numerous other harms.

49   The indictment of the plaintiff was secured by the suppression of exculpatory evidence, by coercion of a fifteen year old witness and by dishonest statements made by the defendants which were revealed prior to trial resulting in the dismissal as well as by other acts of misconduct committed by the defendants.

50   All of the defendants who knew of the commencement and continuation of the malicious prosecution of the plaintiff; the hiding of exculpatory evidence; the undue influence applied to a teenage witness; and/or the misrepresentations about the automobile used in the crime, are liable to the plaintiff via their failure to exercise their affirmative duty to intervene.

51   Defendants Unidentified New York City Police Officers who are supervisors within the defendant NYC's Police Department, who knew of the malicious prosecution; the hiding of exculpatory evidence; the undue influence applied to a teenage witness; and/or the misrepresentations about the automobile used in the crime, and who continued to allow and/or participate in the prosecution of the plaintiff and who either directly participated in the violation of plaintiff's rights or who after learning of the violation failed to remedy the wrong are liable to the plaintiff for violating his rights pursuant to the Fourth Amendment.

52      By reason of the aforesaid, the plaintiff is entitled to compensatory damages in a sum to be determined at trial, he is entitled to an award of punitive damages and attorneys' fees are appropriate pursuant to 42 U.S.C. § 1988.

### AS AND FOR A THIRD CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF
### VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS
### BY THE CITY OF NEW YORK,
### i.e., MONELL CLAIM

53      Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

54      The plaintiff's rights have been violated under the Fourth Amendment to the United States Constitution as made applicable to the states via the Fourteenth Amendment by the defendant, NYC.

55      Defendants NYC as well as unidentified police officers who were supervisors and final decision makers as a matter of policy and practice, have with deliberate indifference failed to properly train, discipline, sanction and retrain police officers, despite their knowledge of the recurring problem of officers bringing false charges and hiding exonerating evidence from criminal defendants and there has been no meaningful attempt on the part of NYC to investigate or forestall further, similar incidents.

56      The defendant NYC intentionally operates an ineffective Civilian Complaint Review Board, which operates for the purpose of wrongfully exonerating and failing to substantiate legitimate claims against officers.

57      The defendant NYC intentionally operates an ineffective Internal Affairs Department of the City's police force, which operates, in part, for the purpose of wrongfully exonerating and failing to substantiate legitimate claims against officers when brought by civilians.

58      The NYPD as a *de facto* policy and practice fails to take disciplinary action against members of the NYPD who are dishonestly swearing to false information resulting in false arrests and malicious prosecutions

and rarely, if ever, are officers disciplined for failing in their affirmative duty to intervene to prevent constitutional violations from taking place in their presence.

59     As a result of NYC's deliberate indifference to the ineffectiveness of the CCRB and IAB, the defendants in the instant case felt free to, and did in fact, violate the plaintiff's rights.

60     It is the routine practice of NYPD officers to fail to act on their duty to intervene to protect civilians whose civil rights are being violated by other officers in their presence.

61     It the routine practice of NYPD officers to retaliate against officers who speak up and/or act when they witness other officers violating civilians' rights.

62     It is the routine practice of NYPD officers to hide and/or not disclose exculpatory Brady material from defendants in criminal cases.

63     In the instant matter, due to the routine practices i.e., the *de facto* policies of the NYPD, officers who saw and/or knew of the plaintiff being falsely arrested and/or maliciously prosecuted due to the facts alleged herein, failed to intervene on his behalf.

64     Despite being often alerted to the recurring aforementioned problems, the NYPD has remained deliberately indifferent to said problems and in so doing encouraged its officers to persist in their illegal, unconstitutional behavior.

65     By reason of the aforementioned, the plaintiff was subjected to pecuniary harms, great indignities, humiliation, anxiety, he was forced to spend over a year in jail as well as being forced to make numerous court appearances, he lost employment opportunities, he was searched, strip searched, handcuffed, he was separated from his family and he was subjected to numerous other harms.

66     By reason of the aforesaid, the plaintiff is entitled to compensatory damages in a sum to be determined at trial and that an award of attorneys' fees is appropriate pursuant to 42 U.S.C. §1988.

**WHEREFORE**, plaintiff demand judgment against the defendants in compensatory and punitive damages in sums to be determined at trial on the First Cause of Action; in compensatory and punitive damages in sums to be determined at trial on the Second Cause of Action; and in compensatory damages in a sum to be determined at trial on the Third Cause of Action, along with reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 on all plaintiff's causes of action together with costs and disbursements of this action; a trial by jury of all issues alleged in this complaint; and such other and further relief as this Court may deem just and proper under the circumstances.

Dated: January 21, 2011
    New York, New York

/ s /
FRED LICHTMACHER (FL-5341)
Attorney for Plaintiff
The Empire State Building
350 5th Avenue Suite 7116
New York, New York 10118
(212) 922-9066

To:   Michael Cardozo
      Corporation Counsel City of New York
      100 Church Street
      New York, New York 10007